LEMMON, Judge.
Milton Jimcoily appealed from .a judgment dismissing his suit against Fireman’s Fund Insurance Company for Workmen’s Compensation benefits claimed for total and permanent disability incurred in connection with his employment.
Jimcoily was employed as a manual laborer with a construction firm insured by Fireman’s Fund. He testified that late on a Friday afternoon, a heavy pump which he was lifting onto a truck fell and struck the second and third toes of his left foot. The next morning (Saturday) his foot was badly swollen when he went to work, and he then reported the accident to Lane Lawson, his foreman. A co-worker, Merlin Broussard, took him to the.company doctor, but his office was closed.
Jimcoily further testified that he worked in pain the next week, but finally on June 29, 1968, the Saturday night of the week following the accident, his brother and sister-in-law took him to Charity Hospital. He was refused admission there after he stated that he was hurt on the job the previous week, since there is no eligibility for an accidental injury covered by workmen’s compensation. He was immediately taken to Ochsner Foundation Hospital, where he related the same history about the falling pump. After being examined in the emergency room, he was advised to elevate the foot, to take warm soaks, and to consult his local physician. (His home was in Port Sulphur.)
His wife testified that after he was unable to sleep that evening, she took him back to Charity Hospital the next morning. In order to gain admission, she stated that he had sustained a nail puncture in his left foot two weeks previously. After being treated that day in the accident room and for the next several days as an outpatient, he was admitted to the hospital on July 5, where his condition was diagnosed as diabetic gangrene of the second to left foot.[1] The toe was amputated on July 12, and the metacarpal head was removed on July 20. He was discharged from the hospital on July 22, 1968 and followed as an outpatient.
The employer referred Jimcoily to a private physician in September, and he was checked regularly through March, 1969 for gradual healing of the amputation site and for diabetes. Compensation benefits and all medical expenses were paid through March IS, 1969.
In May, 1969 Jimcoily consulted a general surgeon, to whom he was referred by his attorney. He also consulted this physician in November, 1969 and April, 1970. Although Jimcoily testified that he had unsuccessfully attempted to work as a laborer for several companies in 1969, the surgeon reported that Jimcoily stated in November *251 that he was working with no special difficulty. This physician also testified that his April, 1970 examination revealed impairment of circulation of the third toe, which had not previously been present. He stated his opinion that the initial trauma could have caused this impairment of circulation by a gradual process, although he admitted that this condition could also be brought about by diabetes. Prognosis is for loss also of the third toe.
The trial court concluded that ,“Mr. Jim-coily’s amputation and his present physical condition are not related or connected to the June 27, 1968 accident.” Jimcoily applied for a new trial and presented the testimony of the doctor who examined him in the Ochsner Hospital emergency room in an effort to prove connection of the disability to an injury on the job. However, the trial court judgment was unchanged.
On appeal Jimcoily contends that the trial court placed too much emphasis on the false statement made by the wife about the nail puncture wound, since the trial judge stated “the Court does not believe the attending physician at Charity Hospital would write 'nail puncture to (left) foot’ if there was no wound”. If this were the only serious inconsistency in the record, perhaps we could accept the wife’s explanation of the nail puncture story, in view of Jimcoily’s lack of education, difficulty of understanding, and history of never having secured medical attention anywhere except at Charity Hospital. However, there are frequent discrepancies throughout the record, which support the trial judge’s disbelief of Jimcoily’s overall version of the origin of his present physical problems.
As to the accident, Jimcoily indicated in deposition that he was injured while lifting a pump onto a truck with Albert Ford and Boy Washington. Ford was subpoenaed but not found by the Deputy Sheriff. At trial Elbert Jenifer testified that the accident occurred when he and Jimcoily were unloading a pump from the truck. Jenifer also verified that Jimcoily reported the accident the next morning to Lawson, the foreman, but neither Lawson nor Merlin Broussard (who allegedly drove Jimcoily to the company doctor and who was still working for the company less than two months before trial) was called to testify. Furthermore, the report to the foreman and the unsuccessful trip to the company doctor allegedly occurred on Saturday, but Jimcoily testified in deposition that he worked only five days per week.
Jimcoily then claims that he worked the following week before again seeking medical attention on a Saturday night, at which time he stated his foot was so swollen that he couldn’t wear a shoe. We find it highly unlikely that he would attempt to see a doctor provided by the company one Saturday and then suffer while working for the same company an entire week before consulting another physician on a Saturday night.
The medical testimony was equally inconsistent, confusing and unconvincing. Jimcoily had been treated for diabetes at Charity Hospital for 15 years, but did not control his weight or otherwise care for this condition. The diagnosis upon his admission to Charity Hospital on July 5 was diabetic gangrene. And the July 2 records note “now severe cellulitis involving dor-sum & sole (distal) foot c pus exuding from puncture site.” (Emphasis supplied) Nowhere in any of the medical records or testimony is there any mention of evidence of a crushing type injury to the foot.
Another major discrepancy is Jimcoily’s testimony at trial that he returned to work for his employer for two months in the summer of 1969, but could not perform his duties, and that his only other work after the accident was with Electro Coal Co. in Pointe a la Hache in July, 1969 for one month. But he testified in deposition that he worked for Becker in Harvey in August, 1969, and Dr. Fisher noted on November 21, 1969 his statement that he was working without any special difficulty.
The plaintiff in a Workmen’s Compensation case, as in any other case, *252 must establish his claim by a preponderance of the evidence. While some inconsistencies in the record may be attributed to Jimcoily’s lack of education and understanding, there still must be sufficient credible evidence upon which the court can conclude that there was an accident on the job and that Jimcoily’s condition resulted from the accident. In this regard the factual conclusions of the trial judge must be accorded great weight on appellate review.
We conclude that the plaintiff failed to prove a connection between any job related incident and his present disability, and we therefore find no manifest error in the judgment of the trial court, which we hereby affirm.
Affirmed.

. This medical information is taken from the Charity Hospital records. We are informed that neither counsel was able at the time of trial to locate the resident physicians from Charity Hospital, and the records were introduced into evidence by stipulation.